IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERDELIN V. JOHNSON, <br> Plaintiff, <br><br> v. <br><br> ALEXANDRA JUNG and GENERAL BOARD OF PENSION AND HEALTH BENEFITS OF THE UNITED METHODIST CHURCH, <br> Defendants. | 02 C 5221 |
| MERDELIN V. JOHNSON, <br> Plaintiff, <br><br> v. <br><br> GENERAL BOARD OF PENSION AND HEALTH BENEFITS OF THE METHODIST CHURCH, JIMMY JACKSON, DEBBIE REID, GERTRUDE LIVERNOUS, and HELEN EXARHAKOS, <br> Defendants. | 04 C 6158 |

## MEMORANDUM AND ORDER

These consolidated employment discrimination cases were recently transferred to this court from Judge Lefkow's docket. Three motions are fully briefed and pending: (1) Ms. Johnson's objections to Judge Denlow's Report and Recommendation ("R&R") regarding General Board's motion in No. 02 5221 to enforce the parties' alleged settlement agreement; (2) General Board's motion in No. 04 C 6158 to dismiss the claims against it; and (3) Jimmy Jackson, Debbie Reid, Gertrude Livernois, and Helen Exarhakos' motion in No. 04 C 6158 to dismiss the claims against them. For the following reasons, the parties' settlement agreement in No. 02 5221 will be enforced. As the settlement agreement also covers the claims raised by Ms.

Johnson in No. 04 C 6158, this means that the defendants' motions to dismiss filed in that case must also be granted.

## Background

The court begins with the observation that Ms. Johnson has previously been represented by five different appointed attorneys and is presently proceeding pro se. Thus, the court will thus construe her filings liberally. The court also notes that it has independently considered whether appointment of counsel would affect the result in this case. Because it concludes that it would not, the court will turn to a summary of the relevant facts.

Judge Denlow recommended that the court grant General Board's motion to enforce the settlement agreement allegedly reached in No. 02 5221. For a full recitation of the events leading up to the alleged settlement, the court incorporates the detailed summary of the facts from the R&R. In short, Judge Denlow conducted four settlement conferences. Ms. Johnson was represented by counsel during all of these conferences.

On June 2, 2003, the parties attempted to settle the case. No agreement was reached and the case was returned to Judge Lefkow for further proceedings.

In June of 2004, Judge Lefkow referred the case for a second settlement conference. The following month, after an extensive negotiations, the parties were close to reaching a monetary agreement. With the concurrence of the parties, Judge Denlow made a settlement recommendation as to the financial terms and gave the parties until August 2, 2004, to advise the court whether they would accept the recommendation.

Before the parties left the settlement conference, Judge Denlow asked the parties to complete his Settlement Checklist/Term Sheet to ensure that all of the other settlement terms

would be agreed upon in the event that the parties accepted the court's monetary recommendation. The Settlement Checklist/Term Sheet is a three page worksheet which lists questions that commonly arise when settlement agreements are finalized. The topics reviewed included items related to the treatment of any monetary terms, forms of release, confidentiality, enforcement mechanisms, disposition of the litigation, documentation of the agreement, the effective date, and other terms. The Settlement Checklist/Term Sheet completed on this day indicated that there would be "[n]o binding agreement until the settlement agreement is fully documented and signed." The parties did not sign the Settlement Checklist/Term Sheet because they had agreed on most, but not all non-monetary terms of the settlement agreement. Therefore, as of July 21, 2004, there was no agreement on either the monetary or non-monetary terms.

Judge Denlow gave the parties eleven days to consider his monetary recommendation. On August 2, 2004, the defendants accepted the settlement recommendation. The same day, Ms. Johnson sent a letter to Judge Denlow accepting the settlement proposal "provided the Defendants agree to make the release mutual by including appropriate language releasing any and all potential claims against Ms. Johnson." The release agreement on the Settlement Checklist/Term Sheet indicated a one way release from Plaintiff to Defendants. Therefore, as of August 2, 2004, there was an agreement between the parties regarding Judge Denlow's monetary recommendation, but there was still no agreement on all of the non-monetary terms.

On August 6, 2004, defendants sent Ms. Johnson a revised settlement agreement incorporating the mutual release language that Ms. Johnson had requested. They gave Ms. Johnson until August 31, 2004, to accept the agreement. On August 30, 2004, Ms. Johnson sent

defendants a revised version of the release agreement that contained numerous changes to various provisions in the agreement.

On August 30, 2004, Ms. Johnson sent Judge Denlow a letter delineating the paragraphs of the proposed settlement agreement that were still in dispute. The following day, Judge Denlow held a third settlement conference to finalize the language in the settlement agreement. During the conference, the defendants agreed to all of Ms. Johnson's changes that were listed in her August 30th letter and handwrote these changes on the settlement agreement. The parties then initialed all pages of the revised settlement with the exception of page one, which contained a provision regarding the treatment of the settlement proceeds. This page was left unsigned in order to finalize the tax treatment of the settlement as Ms. Johnson was unsure whether she wanted the settlement amount to be issued with taxes withheld or not. Defendants repeatedly assured Ms. Johnson that they were amenable to whichever tax treatment Ms. Johnson desired.

During the settlement conference on August 31st, Ms. Johnson never asked to increase the previously agreed upon settlement amount. The only open issue related to whether taxes would be withheld, and the defendants had agreed to leave this matter up to Ms. Johnson and proceed however she wanted with respect to this issue. Therefore, as of August 31st, all of the disputed terms had been worked out, as reflected in the initialed agreement.

Later on August 31st, the defendants sent a revised version of the settlement agreement to Ms. Johnson's counsel for her signature. The revised agreement incorporated all of the handwritten changes that were agreed to by the parties earlier that day. Therefore as of August 31, 2004, a meeting of the minds was reached on all issues relating to the settlement,

since the defendants had agreed to accede to however Ms. Johnson wanted to proceed with respect to taxes.

On September 10, 2004, Ms. Johnson's counsel advised defendants' counsel that Ms. Johnson had refused to sign the revised version of the settlement agreement. Ms. Johnson's counsel informed defendants' counsel that Ms. Johnson might be willing to sign the settlement agreement if the monetary terms of the settlement were more than doubled, and the benefit period was extended from the previously agreed upon 12 months to 18 months.

On September 15, 2004, Judge Denlow held a fourth settlement conference. As presaged by the September 10th demand for more money, Ms. Johnson reiterated her request to more than double the amount of the original monetary agreement and her desire to extend the benefit period. Negotiations then ceased.

The defendants filed a motion to enforce the settlement agreement. Judge Denlow issued a detailed R&R which concluded that the parties had agreed on all material terms and that Ms. Johnson had acted in bad faith in seeking to renegotiate the financial terms of the settlement after agreeing to them. He thus recommended that the defendants' motion to enforce the settlement in No. 02 C 5221 be granted. He also stated that, but for Ms. Johnson's financial situation, he would have sanctioned her for her bad faith attempt to renege on the settlement.

## Discussion

The court will review the R&R using a de novo standard as it addresses a dispositive issue. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Defalco v. Oak Lawn Public Library*, 99 C 02137, 2000 WL 263922 at *2 (N.D. Ill. Mar. 1, 2000) (R&R addressing a motion to enforce a settlement agreement is reviewed de novo).

"A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Laserage Tech Corp. v. Laserage Lab Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). Under Illinois law, an agreement is binding if the parties have a meeting of the minds as to all material terms. *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1992). A meeting of the minds occurs "where there has been assent to the same things in the same sense on all essential terms and conditions." *IMI Norgren, Inc., v. D&D Tooling Mfg., Inc.*, 306 F. Supp.2d 796, 802 (N.D. Ill. 2004). Accordingly, settlement agreements can be enforceable even if they do not explicitly resolve ancillary issues. *Porter v. Chicago Bd. Of Educ.*, 981 F.Supp. 1129, 1131 n.4 (N.D. Ill. 1997).

Judge Denlow concluded that the parties had a meeting of the minds on August 31st, when they agreed to each and every term of the settlement except the tax treatment of Ms. Johnson's payment, and the defendants agreed to let Ms. Johnson pick whatever tax treatment she desired. According to Judge Denlow, the meeting of the minds is reflected in the initialed version of the agreement with the handwritten notations reflecting the final changes.

Ms. Johnson first asserts that she did not voluntarily agree to the settlement because she felt "undue influence" and "pressure" regarding the settlement negotiations. Ms. Johnson, however, was represented by counsel (attorney Steven Florsheim), and the alleged pressure occurred prior to the key date of August 31, 2004. Moreover, many parties do not ask the court to conduct a settlement conference or enthusiastically participate in a conference once one is scheduled. This does not mean that the court cannot ask the parties to come to the table and discuss ways to settle their dispute.

Second, Ms. Johnson has submitted an affidavit from Mr. Florsheim in which he states that he did not believe that there was a meeting of the minds because the defendants had insisted that Ms. Ms. Johnson take 21 days to consider whether she wanted to finalize the agreement. Mr. Florsheim's opinion is at odds with the facts in this case as Ms. Johnson initialed a settlement agreement on August 31st. It also is inconsistent with Judge Denlow's finding that Ms. Johnson in fact accepted the agreement on August 31st and did not revoke that agreement within the seven day period allowed by the Older Workers Benefit Protection Act, 29 U.S.C. § 626(g).

Third, Ms. Johnson contends that there was no meeting of the minds because the withholding issue was still open as of August 31st. The court disagrees, as this term is not material. In any event, there was an agreement as to this purportedly open issue, as the defendants agreed to do whatever Ms. Johnson wanted with respect to the withholding for the settlement proceeds. Ms. Johnson's remaining arguments do not warrant separate discussion.

In sum, the allegations in Ms. Johnson's filing are not enough to undermine the settlement agreement. At the August 31st settlement conference, both parties initialed the pages of the agreement and the only open issue was how to handle the withholdings for Ms. Johnson's settlement proceeds. The defendants agreed to let Ms. Johnson choose how to resolve this issue and agreed to accept whatever choice she made. Therefore, as of August 31st, the parties agreed to all material terms and had reached a binding settlement that could only be set aside if Ms. Johnson revoked the agreement within the seven day period allowed by the Older Workers Benefit Protection Act. She did not do so. She is, therefore, bound by the terms of the agreement.

It is true that Ms. Johnson now clearly regrets entering in the agreement. "Buyer's remorse," however, is not enough to overturn a contract under Illinois law. *See Laserage Technology v. Laserage Laboratories*, 972 F.2d 799, 802 (7th Cir. 1992) (where the terms of a settlement agreement are clear and unambiguous, they must be enforced as written). The court thus finds, after a careful review of the entire record, that the settlement is valid. Accordingly, Ms. Johnson's objections to Magistrate Judge Denlow's R&R are overruled. As the settlement agreement also covers the claims raised by Ms, Johnson in No. 04 C 6158, this means that the defendants' motions to dismiss filed in that case must also be granted.

## Conclusion

For the above reasons, the parties' settlement agreement in No. 02 5221 will be enforced and the defendants' motions to dismiss filed in No. 04 C 6158 are granted. The clerk is directed to enter a Rule 58 judgment in Nos. 02 5221 and 04 C 6158 and to terminate these cases from the court's docket.

DATE: May 4, 2005

Blanche M. Manning
United States District Judge